UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| **The Doris Behr 2012 Irrevocable Trust**, <br><br> Plaintiff, <br><br> v. <br><br> **Johnson & Johnson**, <br><br> Defendant. | Case No. 3:19-cv-8828 |

# COMPLAINT

The Doris Behr 2012 Irrevocable Trust ("the Trust") is one of many shareholders in Johnson & Johnson. The Trust is seeking shareholder approval for a proposal that would amend Johnson & Johnson's bylaws and require the company's shareholders to resolve their federal securities law claims through arbitration rather than costly class-action litigation. *See, e.g.*, *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

Johnson & Johnson, however, refused to include the Trust's proposal in the proxy solicitation materials that it recently issued to its shareholders. The Trust seeks a declaratory judgment that Johnson & Johnson violated the federal securities laws by excluding the Trust's proposal from these proxy materials, as well as an injunction that: (1) requires Johnson & Johnson to issue supplementary proxy materials that include the Trust's proposal; (2) requires Johnson & Johnson to announce in those proxy materials that the Trust's proposal is legal under federal and New Jersey law; and (3) prevents Johnson & Johnson from excluding proposals of this sort from future proxy materials.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in the district of New Jersey. *See* 28 U.S.C. § 1391(b)(2).

3. Assignment to the Trenton vicinage is proper because Johnson & Johnson is headquartered in the southern portion of Middlesex County. *See* Local Rule 40.1(b).

## PARTIES

4. Plaintiff The Doris Behr 2012 Irrevocable Trust is a trust established under the laws of Massachusetts.

5. Defendant Johnson & Johnson is a New Jersey corporation whose headquarters are located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08608.

## STATUTORY BACKGROUND

6. The Doris Behr 2012 Irrevocable Trust ("the Trust") owns stock in Johnson & Johnson. The Trust is therefore a partial owner of the company.

7. Johnson & Johnson, like many large companies, holds annual shareholder meetings, where the company's shareholders vote on decisions relevant to the company's business.

8. Because Johnson & Johnson is a large and publicly traded company, it is infeasible for each shareholder to attend this annual meeting in person. To deal with this problem, Johnson & Johnson sends "proxy solicitation materials" to each of its shareholders before the annual meeting.

9. These proxy materials include: (1) a "proxy statement," which explains the issues to be voted on at the meeting and requests authority to vote on behalf of the shareholder in accordance with the shareholder's instructions; and (2) a "proxy card," which shareholders use to instruct those who will vote on the shareholder's behalf.

10. Section 14(a) of the Securities Exchange Act of 1934 requires all proxy solicitation materials to comply with the SEC's rules and regulations. *See* 15 U.S.C.

§ 78n(a)). The SEC rules governing proxy solicitations are codified at 17 C.F.R. § 240.14a-1 *et seq.*

11. Only certain shareholders are eligible to submit proposals for consideration at the company's shareholder meetings. Under the SEC's rules, the proposing shareholder "must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to vote on the proposal at the meeting for at least one year" before submitting the proposal, and must "continue to hold those securities through the date of the meeting." 17 C.F.R. § 240.14a-8(b)(1) (attached as Exhibit 9).

12. A shareholder proposal and its accompanying supporting statement are limited to 500 words. *See* 17 C.F.R. § 240.14a-8(b)(1). In addition, the proposal must be "received at the company's principal executive offices not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting." *See* 17 C.F.R. § 240.14a-8(e)(2) (attached as Exhibit 9).

13. If an eligible shareholder submits a proposal that meets these requirements, then the company must include that proposal in its proxy solicitation materials unless the company shows that the proposal falls within one or more of the 13 exceptions listed in Rule 14a-8(i) (codified at 17 C.F.R. § 240.14a-8(i), attached as Exhibit 9). One of these exceptions, Rule 14a-8(i)(2), allows a company to exclude proposals that would "cause the company to violate any state, federal, or foreign law to which it is subject." 17 C.F.R. § 240.14a-8(i)(2) (attached as Exhibit 9).

14. The company bears the burden of demonstrating that an exception listed in Rule 14a-8(i) applies. *See Trinity Wall Street v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015) ("[The company] bears the burden of establishing as a matter of law that it properly excluded the proposal under an exception to Rule 14a-8.").

## THE TRUST'S SHAREHOLDER PROPOSAL

15.  On November 9, 2018, the Trust submitted a proposal for Johnson & Johnson's shareholders to consider and vote upon at the company's 2019 annual shareholder meeting. *See* Exhibit 1.

16.  The text of the Trust's proposal reads as follows:

> **Resolved**: The shareholders of Johnson & Johnson request the Board of Directors take all practicable steps to adopt a mandatory arbitration bylaw that provides:
>
> - for disputes between a stockholder and the Corporation and/or its directors, officers or controlling persons relating to claims under federal securities laws in connection with the purchase or sale of any securities issued by the Corporation to be exclusively and finally settled by arbitration under the Commercial Rules of the American Arbitration Association (AAA), as supplemented by the Securities Arbitration Supplementary Procedures;
>
> - that any disputes subject to arbitration may not be brought as a class and may not be consolidated or joined;
>
> - an express submission to arbitration (which shall be treated as a written arbitration agreement) by each stockholder, the Corporation and its directors, officers, controlling persons and third parties consenting to be bound;
>
> - unless the claim is determined by the arbitrator(s) to be frivolous, the Corporation shall pay the fees of the AAA and the arbitrator(s), and if the stockholder party is successful, the fees of its counsel;
>
> - a waiver of any right under the laws of any jurisdiction to apply to any court of law or other judicial authority to determine any matter or to appeal or otherwise challenge the award, ruling or decision of the arbitrator(s);
>
> - that governing law is federal law; and
>
> - for a five-year sunset provision, unless holders of a majority of Corporation shares vote for an extension and the duration of any extension.

*See* Exhibit 1.

    17.    The Trust's proposal included a "supporting statement," which explained:

> The United States is the only developed country in which stockholders of public companies can form a class and sue their own company for violations of securities laws. As a result, U.S. public companies are exposed to litigation risk that, in aggregate, can cost billions of dollars annually. The costs (in dollars and management time) of defending and settling these lawsuits are borne by stockholders. Across the corporate landscape, this effectively recirculates money within the same investor base, minus substantial attorneys' fees. Lawsuits are commonly filed soon after merger or acquisition announcements, or stock price changes, based on little more than their happening.
>
> We believe arbitration is an effective alternative to class actions. It can balance the interests and rights of plaintiffs to bring federal securities law claims, with cost-effective protections for the corporation and its stockholders.
>
> The Supreme Court has held that mandatory individual arbitration provisions are not in conflict with any provision of the federal securities laws, and the SEC has no basis to prohibit mandatory arbitration provisions that apply to federal securities law claims. Furthermore, New Jersey law establishes that the bylaws of a corporation are to be interpreted as a contract between the corporation and its stockholders.
>
> A bylaw providing for mandatory individual arbitration of federal securities law claims would permit stockholders and corporations to opt-out of a flawed system that often seems more about the lawyers than the claimants and invariably wastes stockholder funds on expensive litigation costs.

*See* Exhibit 1.

    18.    The Trust owns 1,050 shares of Johnson & Johnson (with a market value well in excess of $2,000), and it held these shares for at least one year when it submitted its proposal on November 9, 2018. *See* Exhibit 1. The Trust will continue to hold these shares through the company's 2019 shareholder meeting. The Trust is therefore eligible to submit this proposal under Rule 14a-8(b)(1). *See* 17 C.F.R. § 240.14a-8(b)(1) (attached as Exhibit 9).

## JOHNSON & JOHNSON'S DECISION TO EXCLUDE THE TRUST'S PROPOSAL FROM ITS 2019 PROXY MATERIALS

19.   In response to the Trust's proposal, Johnson & Johnson wrote a letter to the SEC Division of Corporation Finance on December 11, 2018. In this letter, Johnson & Johnson announced its intent to exclude the Trust's proposal from its proxy solicitation materials. It also asked the Division to issue a "no-action letter," which would declare that the Division will not recommend enforcement action against Johnson & Johnson for excluding the Trust's proposal. *See* Exhibit 2.

20.   Johnson & Johnson claimed that the Trust's proposal should be excluded under Rule 14a-8(i)(2) because it would cause the company to violate federal law. *See id*. at 3–5. Specifically, the company asserted that the Trust's proposal would cause Johnson & Johnson to violate section 29(a) of the Securities Exchange Act, which states that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." *See* 15 U.S.C. § 78cc(a).

21.   Johnson & Johnson's interpretation of section 29(a) was foreclosed by *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987), which enforced an agreement to arbitrate securities-law claims and rejected the plaintiffs' contention that section 29(a) had rendered the agreement unenforceable. The Supreme Court held that section 29(a) "only prohibits waiver of the substantive obligations imposed by the Exchange Act," and does not preclude agreements that require disputes arising under the Securities Exchange Act to be litigated in an arbitral forum. *See id*. at 228; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

22.  Johnson & Johnson's argument was also foreclosed by *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), which prohibits federal agencies from interpreting federal statutes to block the enforcement of arbitration agreements unless the statute has "manifested a clear intention" to depart from the requirements of the Federal Arbitration Act. *Id.* at 1632. Nothing in the text of section 29(a) evinces "a clear intention" to prevent shareholders from agreeing to arbitrate their claims under federal securities laws.

23.  On December 24, 2018, the Trust wrote to the SEC Division of Corporation Finance and explained that Johnson & Johnson's argument was irreconcilable with *Epic Systems*. *See* Exhibit 3. The Trust also reminded the Division that it is forbidden to consider any other basis for excluding the Trust's proposal that was not presented by the company. *See id.* at 3 n.6 (citing Staff Legal Bulletin No. 14).

24.  In response to the Trust's letter of December 24, 2018, Johnson & Johnson sent a supplementary letter to the SEC Division of Corporation Finance on January 16, 2019. *See* Exhibit 4. In this letter, Johnson & Johnson argued for the first time that the Trust's proposal should be excluded because it would cause the company to violate New Jersey *state* law. *See id.* at 2–4. Johnson & Johnson admitted that no court in New Jersey has ever ruled on whether a corporation's bylaws may require arbitration of shareholder claims. *See id.* at 3 ("Johnson & Johnson acknowledges that no New Jersey court has considered the issue of whether a mandatory arbitration bylaw requiring shareholders to arbitrate claims under the federal securities laws would be legal as a matter of New Jersey law."). And Johnson & Johnson could not point to any statutory language that precludes New Jersey corporations from establishing an arbitration regime of this sort. Instead, Johnson & Johnson attached an opinion letter from Lowenstein Sandler, which cited cases interpreting Delaware and Pennsylvania law and predicted that the New Jersey courts would follow the rationale in those cases. *See* Exhibit 4, Ex. A at 4–8 (citing *Sciabacucchi v. Salzberg*, No. CV 2017-0931-

JTL, 2018 WL 6719718 (Dec. 19, 2018), and *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 163 (3d Cir. 2009)).

25.  The Trust responded to this supplementary letter on January 23, 2019. *See* Exhibit 5. The Trust protested that New Jersey law was *at most* "unclear or unsettled" on the legality of the Trust's proposal, and that the company could not possibly carry its burden of establishing that the Trust's proposal "*would*, if implemented, cause the company to violate any state, federal, or foreign law to which it is subject," as required by the text of Rule 14a-8(i)(2). *See* 17 C.F.R. § 240.14a-8(i)(2) (emphasis added); Exhibit 5 at page 8. The Trust also argued that the opinion letter from Lowenstein Sandler had misinterpreted the requirements of Delaware, Pennsylvania, and New Jersey law. *See id*. at 3–10. Finally, the Trust noted that *even if* Johnson & Johnson were correct to assert that New Jersey law forbids the company to adopt the Trust's shareholder-arbitration proposal, the Federal Arbitration Act would preempt New Jersey law and allow Johnson & Johnson to implement the Trust's proposal regardless of what state law says. *See id*. at 10–12.

26.  On January 29, 2019, the Attorney General of New Jersey sent a letter to the SEC Division of Corporation Finance in support of Johnson & Johnson. *See* Exhibit 6. In this letter, the Attorney General opined that the Trust's proposal, if adopted, would cause Johnson & Johnson to violate New Jersey law. *See id*. at 2–5. The Attorney General, like Johnson & Johnson, was unable to identify any statutory language or any New Jersey court decision that prohibits a corporation from requiring its shareholders to arbitrate their federal securities law claims. *See id*. at 3 (acknowledging the "absence of controlling New Jersey authority"). Instead, the New Jersey Attorney General based his opinion on Delaware judicial opinions, as well as strained inferences from New Jersey statutes that say nothing about whether corporations may include arbitration requirements in their bylaws. *See id*. at 2–5.

27.  On February 1, 2019, the Trust sent a letter to the SEC Division of Corporation Finance in response to the letter from the New Jersey Attorney General. *See* Exhibit 7. The Trust reiterated its claim that the Federal Arbitration Act will preempt any provision of New Jersey law that might prevent Johnson & Johnson from adopting the Trust's proposal, and it noted that the Attorney General's letter did not even attempt to address the issue of FAA preemption. *See id*. at 3.

## THE SEC'S NO-ACTION LETTER

28.  After considering all of these submissions, the SEC Division of Corporation Finance issued a "no-action letter" on February 11, 2019, announcing that it would *not* recommend enforcement action if Johnson & Johnson proceeded with its plan to exclude the Trust's proposal from its 2019 proxy materials. *See* Exhibit 8. The no-action letter opined that Johnson & Johnson could exclude the Trust's proposal under Rule 14a-8(i)(2), but only on the ground that the proposal would cause Johnson & Johnson to violate state law. *See id*.

29.  In reaching this conclusion, the Division put decisive weight on the letter submitted by the Attorney General of New Jersey. *See id*. ("When parties in a rule 14a-8(i)(2) matter have differing views about the application of state law, we consider authoritative views expressed by state officials. Here, the Attorney General of the State of New Jersey, the state's chief legal officer, wrote a letter to the Division stating that 'the Proposal, if adopted, would cause Johnson & Johnson to violate New Jersey state law.' We view this submission as a legally authoritative statement that we are not in a position to question.").

30.  The Division, however, emphasized that it was "not expressing its own view on the correct interpretation of New Jersey law," and that it was not "'approving' or 'disapproving' the substance of the Proposal or opining on the legality of it." *Id*. The

Division also invited the parties to "seek a more definitive determination from a court of competent jurisdiction." *Id*.

31. The Division refused to opine on whether the Trust's proposal would cause Johnson & Johnson to violate federal law. *See id*. ("We are also not expressing a view as to whether the Proposal, if implemented, would cause the Company to violate federal law.").

32. In reliance on the Division's no-action letter, Johnson & Johnson excluded the Trust's proposal from the 2019 proxy materials that it mailed to its shareholders on March 13, 2019.

33. The company's annual shareholder meeting is scheduled for April 25, 2019, so there is still time for Johnson & Johnson to issue supplementary proxy materials that include the Trust's proposal before the 2019 shareholder meeting.

34. The Trust intends to submit its proposal again for the 2020 shareholder meeting, and it will continue submitting this proposal each year until the proposal is adopted by the shareholders.

## COUNT ONE: VIOLATION OF FEDERAL SECURITIES LAW

35. Johnson & Johnson violated section 14(a) of the Securities Exchange Act by excluding the Trust's proposal from its 2019 proxy materials. Section 14(a) requires compliance with all SEC rules governing proxy solicitations, and Rule 14a-8 required Johnson & Johnson to include the Trust's proposal in its proxy materials unless it could establish that an exception listed in Rule 14a-8(i) applies.

36. The only exception that Johnson & Johnson has invoked is Rule 14a-8(i)(2), which allows the company to exclude proposals that would cause the company to violate federal or state law.

37. The Trust's proposal will not cause Johnson & Johnson to violate federal law, because the Federal Arbitration Act requires the enforcement of arbitration agreements, and Johnson & Johnson has been unable to identify any federal statute that "manifest[s] a clear intention to displace the Arbitration Act." *Epic Systems*, 138 S. Ct. at 1632.

38. The Trust's proposal will not cause Johnson & Johnson to violate the law of New Jersey, because neither Johnson & Johnson nor the New Jersey Attorney General has identified any New Jersey statute or court decision that prohibits the enforcement of the arbitration agreements described in the Trust's proposal.

39. Even if Johnson & Johnson had shown that New Jersey courts would decline to enforce the arbitration agreements described in the Trust's proposal, that *still* would not show that the company would "violate" New Jersey law by amending its corporate bylaws to provide for the arbitration of securities law claims. A company does not "violate" state law by entering into an arbitration agreement that happens to be unenforceable under the law of that state. Parties to an unenforceable contract have not "violated" state law unless the law imposes civil or criminal penalties on the act of entering into the particular agreement (such as a civil or criminal conspiracy). A company that merely enters into an arbitration agreement that the state courts will not enforce, by contrast, has not "violated" any law; it has simply made an agreement that will not be enforceable in court.

40. Finally, even if Johnson & Johnson could show that New Jersey law prohibits the enforcement of corporate bylaws that provide for arbitration of a shareholder's federal securities law claim, a state law of that sort would be preempted by the Federal Arbitration Act and void.

41. The Trust therefore seeks declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and section 14(a) of the Securities Exchange Act.

42. The Trust seeks a preliminary and permanent injunction that will require Johnson & Johnson to issue supplemental proxy materials that include the Trust's proposal before the shareholder meeting scheduled for April 25, 2019, and that prevents Johnson & Johnson from excluding the Trust's proposal (or similar proposals) from its proxy materials in future years.

43. The Trust also seeks injunctive relief that requires Johnson & Johnson to announce in its proxy materials that the Trust's proposal is legal under the law of New Jersey and under the law the United States. The public assertions of illegality that Johnson & Johnson and the New Jersey Attorney General have made will taint the Trust's proposal in the eyes of shareholders, and Johnson & Johnson is obligated to remove this taint by informing shareholders that the Trust's proposal is lawful. To omit an affirmative statement of legality will render the proxy materials misleading, in violation of Rule 14a-9. *See* 17 C.F.R. § 240.14a-9.

## DEMAND FOR RELIEF

44. The Trust respectfully requests that the court:
    a. declare that Johnson & Johnson violated section 14(a) of the Securities Exchange Act by excluding the Trust's proposal from its 2019 proxy materials;
    b. declare that Johnson & Johnson will not violate federal law if it amends its bylaws in the manner described in the Trust's proposal;
    c. declare that Johnson & Johnson will not violate the law of New Jersey if it amends its bylaws in the manner described in the Trust's proposal;
    d. declare that any New Jersey law that purports to prevent a company from requiring its shareholders to arbitrate their federal securities law claims is preempted by the Federal Arbitration Act;

  e.  issue preliminary and permanent injunctions that: (i) require Johnson & Johnson to issue supplemental proxy materials that include the Trust's proposal before the shareholder meeting scheduled for April 25, 2019; (ii) require Johnson & Johnson to announce in those proxy materials that the Trust's proposal is legal under both federal and New Jersey law; and (iii) prevent Johnson & Johnson from excluding the Trust's proposal (or similar proposals) from its proxy materials in future years;

  f.  award costs and attorneys' fees;

  g.  grant all other relief that the Court deems just, proper, or equitable.

                    Respectfully submitted.

                     /s/ Walter S. Zimolong

| | |
|---|---|
| JONATHAN F. MITCHELL* | WALTER S. ZIMOLONG |
| Mitchell Law PLLC | Zimolong LLC |
| 106 East Sixth Street, Suite 900 | P.O. Box 552 |
| Austin, Texas 78701 | Villanova, PA 19085 |
| (512) 686-3940 (phone) | (215) 665-0842 |
| (512) 686-3941 (fax) | wally@zimolonglaw.com |
| jonathan@mitchell.law | |

HAL S. SCOTT*
Harvard Law School
1557 Massachusetts Avenue
Cambridge, Massachusetts 02138
(617) 495-4590
hscott@law.harvard.edu

* *pro hac vice* applications pending

Dated: March 21, 2019          *Counsel for Plaintiff*