## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE DORIS BEHR 2012 IRREVOCABLE TRUST,
*Plaintiff,*

v.

JOHNSON & JOHNSON,
*Defendant,*

and

THE CALIFORNIA PUBLIC EMPLOYEES'
RETIREMENT SYSTEM and THE COLORADO
PUBLIC EMPLOYEES' RETIREMENT
ASSOCIATION,
*Proposed Intervenors-
Defendants.*

Case No. 3:19-cv-08828 (MAS) (LHG)

Motion Day: June 17, 2019

## Memorandum in Support of Motion of the California Public Employees' Retirement System and the Colorado Public Employees' Retirement Association to Intervene as Defendants

MARC I. GROSS, ESQ.
POMERANTZ LLP
600 Third Avenue
New York, New York, 10016
(212) 661-1100

SALVATORE J. GRAZIANO
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY  10019
(212) 554-1400

May 23, 2019

DEEPAK GUPTA (*pro hac vice*)
ALEXANDRIA TWINEM *
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741

JAMES E. CECCHI
LINDSEY H. TAYLOR
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Counsel for Proposed Intervenors California Public
Employees' Retirement System and The Colorado
Public Employees' Retirement Association*

* *Admitted in New York only; practicing under
supervision of members of the D.C. Bar.*

# TABLE OF CONTENTS

Table of authorities ................................................................................................... ii

Introduction ............................................................................................................. 1

Background ............................................................................................................... 3

    A.    For over half a century, shareholders have been able to bring class actions to police securities fraud. ............................................................................ 3

    B.    Professor Hal Scott, a vocal opponent of securities class actions, proposes to ban class-action litigation via corporate bylaws. ................................. 4

    C.    Johnson & Johnson excludes the proposed bylaw amendment and seeks a no-action letter from the Securities and Exchange Commission. ........................... 5

    D.    The New Jersey Attorney General's office weighs in, and the SEC's no-action letter defers to its view that the proposal would violate state law. ................ 6

    E.    Hal Scott's trust sues Johnson & Johnson, seeking to force the company to include his proposal in its proxy materials. ............................................. 7

    F.    Colorado PERA and CalPERS seek to intervene to safeguard shareholders' ability to sue Johnson & Johnson in class actions. ........................... 7

Argument ................................................................................................................. 10

    I.    Colorado PERA and CalPERS are entitled to intervene as of right under Federal Rule of Civil Procedure 24(A). ..................................................... 10

        A.    The motion to intervene is timely. ........................................... 11

        B.    Colorado PERA and CalPERS have a substantial interest in this litigation. ...................................................................... 12

        C.    Colorado PERA's and CalPERS' interests may be impaired by the disposition of this case. ....................................................... 16

        D.    Johnson & Johnson may not adequately represent the interests of Colorado PERA and CalPERS. .............................................. 17

    II.    In the alternative, Colorado PERA and CalPERS should be granted permissive intervention under Rule 24(b). ........................................... 21

Conclusion ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*ACRA Turf, LLC v. Zanzucci,*
 2013 WL 776236 (D.N.J. Feb. 27, 2013) ............................................................... 21

*Amchem Produdcts, Inc. v. Windsor,*
 521 U.S. 591 (1997) ............................................................................................... 16

*AMS Construction Co. v. Reliance Ins. Co.,*
 2004 WL 2600792 (E.D. Pa. Nov. 15, 2004) ......................................................... 22

*Brody ex rel. Sugzdinis v. Spang,*
 957 F.2d 1108 (3d Cir. 1992) ................................................................... 11, 16, 19

*Bushansky v. Armacost,*
 2014 WL 5335255 (N.D. Cal. Oct. 16, 2014) ....................................................... 15

*Glover v. Ferrero USA, Inc.,*
 2011 WL 5007805 (D.N.J. Oct. 20, 2011) ............................................................ 11

*Harris v. Pernsley,*
 820 F.2d 592 (3d Cir. 1987) .................................................................................. 15

*In re Cendant Corp. Litigation,*
 264 F.3d 201 (3d Cir. 2001) ............................................................................... 8, 13

*In re Fine Paper Antitrust Litigation,*
 695 F.2d 494, 500 (3d Cir. 1982) .......................................................................... 11

*In re NYSE Specialists Securities Litigation,*
 260 F.R.D. 55 (S.D.N.Y. 2009) ............................................................................... 8

*In re UnitedHealth Group Inc. PSLRA Litigation,*
 643 F. Supp. 2d 1094 (D. Minn. 2009) .................................................................... 8

*Kleissler v. U.S. Forest Service,*
 157 F.3d 964 (3d Cir. 1998) .......................................................................... *passim*

*Koby v. ARS National Services, Inc.,*
 846 F.3d 1071 (9th Cir. 2018) ............................................................................... 16

*Lambert v. Fisherman's Dock Co-op., Inc.,*
 61 N.J. 597 (1972) .................................................................................................... 6

*Liberty Mutual Insurance Co. v. Treesdale Inc.,*
 419 F.3d 216 (3d Cir. 2005) ...................................................................... 10, 12, 13

*List v. Fashion Park, Inc.*,
  340 F.2d 457 (2d Cir. 1965) ............................................................................ 3

*Michaels Stores v. Castle Ridge Plaza Assocsiates*,
  6 F. Supp. 2d 360 (D.N.J. 1998) ................................................................... 11

*Mountain Top Condominium Assocation v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ............................................................................ 13

*New Jersey Media Group Inc. v. United States*,
  836 F.3d 421 (3d Cir. 2016) .......................................................................... 18

*National Wildlife Federation v. Ruckelshaus*,
  99 F.R.D. 558 (D.N.J. 1983) ......................................................................... 22

*Pennsylvania v. President of the United States*,
  888 F.3d 52 (3d Cir. 2018) .......................................................... 13, 16, 17, 18

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................... 8

*Powell v. Ridge*,
  1998 WL 599387 (E.D. Pa. Sept. 10, 1998) ............................................... 11

*PPL Energyplus, LLC v. Solomon*,
  2011 WL 13128622 (D.N.J. July 19, 2011) ................................................. 12

*Sciabacucchi v. Salzberg*,
  No. CV 2017-0931-JTL, 2018 WL 6719718 (Del. Ch. Dec. 19, 2018) ........ 6

*Stahl v. Gibraltar Financial Corp.*,
  967 F.2d 335 (9th Cir. 1992) ........................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................ 3

*Trinity Wall Street v. Wal-Mart Stores, Inc.*,
  792 F.3d 323 (3d Cir. 2015) .......................................................................... 14

*U.S. House of Representatives v. Price*,
  2017 WL 3271445 (D.C. Cir. Aug. 1, 2017) (per curiam) ........................... 20

**Statutes and Regulations**

17 C.F.R. § 240.14a-8(i)(1)–(2) ............................................................................. 6

Fed. R. Civ. P. 24(b)(2) ....................................................................................... 21

N.J.S.A. § 14A:2-9(5)(a) .................................................................................................. 7

**Other Agency Materials**

*Proposed Amendments to Rule 14a-8 under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders*, SEC Release No. 19135, 1982 WL 600869 ...................................................14

**Other Authorities**

Susan Antila, *A Harvard Professor Filed a Shareholder Lawsuit to Restrict Shareholder Rights*, The Intercept, April 9, 2019, https://bit.ly/2Io5tOU .........................................................................4

Barbara Black, *Eliminating Securities Fraud Class Actions Under the Radar*, 2009 Colum. Bus. L. Rev. 802 ..................................................................................................................................4

California Public Employees' Retirement System, 2018 Assembly Bill 20 Legislative Report, https://bit.ly/2J5hfPB ..............................................................................................9

California Public Employees' Retirement System., *About CalPERS: Facts at a Glance for Fiscal Year 2018–2019*, https://bit.ly/2PXQEVj .........................................................................8

Jill E. Fisch, *Federal Securities Fraud Litigation as a Lawmaking Partnership*, 93 Wash. U. L. Rev. 453 (2015) .............................................................................................................................3

Jill E. Fisch, *Measuring Efficiency in Corporate Law: The Role of Shareholder Primacy*, 31 J. Corp. L. 637 (2006) .........................................................................................................................3, 4

H.R. Rep. No. 104-327 (1995), reprinted in 1995 U.S.C.C.A.N. 730 .........................................13

Hal Scott, Opinion, *The SEC's Misguided Attack on Shareholder Arbitration*, Wall Street J. (Feb. 21, 2019), https://on.wsj.com/2Ww1sw8 ...................................................................................4

Complaint, *Hall v. Johnson & Johnson*, No. 18-cv-1833-FLW-TJB (D.N.J. Feb. 28, 2019), ECF No. 33 ...............................................................................................................................10, 16

Ann M. Lipton, *Manufactured Consent: The Problem of Arbitration Clauses in Corporate Charters and Bylaws*, 104 Geo. L.J. 583 (2016) .......................................................................................15

Lawrence E. Mitchell, *The "Innocent Shareholder": An Essay on Compensation and Deterrence in Securities Class-Action Lawsuits*, 2009 Wis. L. Rev. 243 ...................................................................4

*Securities Investor Protection Act of 1991: Hearing on S. 1533 Before the Subcommittee on Securities of the Senate Committee on Banking, Housing and Urban Affairs*, 102d Cong. (1991) (statement of Richard C. Breeden, Chair, Securities & Exchange Commission) .............................................3

Statement of the U.S. Chamber of Commerce, *Putting Investors First: Reviewing Proposals to Hold Executives Accountable* (Testimony before the U.S. House of Representatives, Committee on Financial Services), Apr. 3, 2019 ....................................................................20

iv

Thomas L. Riesenberg, *Arbitration and Corporate Governance: A Reply to Carl Schneider*, 4
    Insights 8 (1990) ......................................................................................................................5

## INTRODUCTION

This case comes before the Court in a strange posture. The plaintiff, the Doris Behr 2012 Irrevocable Trust, has proposed an amendment to Johnson & Johnson's bylaws that would ban class actions for all shareholders' securities-law claims against Johnson & Johnson, forcing such claims into individual arbitration. The defendant, Johnson & Johnson, currently opposes including this proposal in its proxy materials because it would violate state and federal law.

So, as things stand, this litigation presents a truly anomalous scenario: *Johnson & Johnson* is the only party defending shareholders' right to bring a class action *against Johnson & Johnson*. Meanwhile, the only shareholder party—a trust that owns 1,050 Johnson & Johnson shares—has chosen to advocate a position that is contrary to other shareholders' interests.

In this motion, two of Johnson & Johnson's largest shareholders—the Colorado Public Employees' Retirement Association and the California Public Employees' Retirement System— seek to intervene to resolve that anomaly. In contrast to the trust's one thousand shares, Colorado PERA and CalPERS together hold over *ten million* shares of Johnson & Johnson stock. They are also putative absent class members in a pending securities-fraud case against Johnson & Johnson. They are thus well positioned to intervene to ensure that shareholders' right to sue Johnson & Johnson is vigorously protected, that shareholders' unique interests are adequately represented, and that they have a right to appeal any adverse judgment.

The requirements for intervention as of right under Rule 24(a) are easily satisfied. *First*, the motion is timely; it has been filed at the earliest possible stage of the case. *Second*, Colorado PERA and CalPERS have a "considerable stake" in the litigation's outcome. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998). The case concerns their ability to recover for Johnson & Johnson's past conduct and police any future conduct through shareholder class actions. *Third*,

these interests are squarely implicated by the relief sought by the plaintiff: allowance of a proposal that the intervenors believe is illegal and that would cut off their ability to bring or participate in shareholder class actions. *Fourth*, Colorado PERA and CalPERS do not believe that Johnson & Johnson can adequately represent their interests. Shareholders should not be forced to rely on a corporation to defend the shareholders' right to sue that corporation. Johnson & Johnson simply cannot share the proposed intervenors' interest in protecting that right. Under these unique circumstances, it should be apparent that the adequate representatives of the shareholders' interests are the shareholders themselves.

All four legal requirements for intervention as of right are thus satisfied. But even if they were not, this Court would still have broad discretion to permit intervention. The Court should exercise that discretion to ensure that shareholders have an opportunity to defend their interests here. Intervention will not delay this litigation in any way. Colorado PERA and CalPERS are ready to brief the merits at the same time that Johnson & Johnson moves to dismiss, and will strive to avoid unnecessary redundancy by focusing on the issues from a shareholder's perspective. And because this case presents purely legal questions, there is no risk of compounding any discovery. In short, there is no downside to intervention. On the other hand, intervention will fully preserve shareholders' ability to direct litigation that concerns their interests, including in any future appeals.

Johnson & Johnson has indicated that it intends to take no position on this motion.[1] And the plaintiff trust—which owns a far smaller interest in Johnson & Johnson and purports to be

---

[1] Johnson & Johnson has indicated that, while it has not taken a position with respect to the current motion, its stance should not be deemed (or argued) as a waiver of any of its arguments, nor should its position be viewed as an assent to any of the arguments raised in this motion. Johnson & Johnson reserves its right to challenge any arguments (including those raised herein) at a later point in time.

advocating for its shareholders—has indicated that it takes no position on the motion at this time but reserves the right to file a response.

## BACKGROUND

### A.     For over half a century, shareholders have been able to bring class actions to police securities fraud.

For over half a century, shareholders in the United States have been able to challenge securities fraud through class actions. *See, e.g.*, *List v. Fashion Park, Inc.*, 340 F.2d 457, 462–63 (2d Cir. 1965) (collecting cases from the 1940s and 1950s). As the Supreme Court has recognized, "meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). And both Congress and the Supreme Court have repeatedly emphasized that the class-action mechanism is integral to this private litigation. *See* Jill E. Fisch, *Federal Securities Fraud Litigation as a Lawmaking Partnership*, 93 Wash. U. L. Rev. 453, 464–69 (2015).

Class actions provide an important tool to compensate investors who are the victims of securities fraud. Because the Securities and Exchange Commission only has the resources to prosecute a fraction of all securities fraud, private investors will rarely be compensated for the deflated price of their shares caused by fraud unless they initiate a suit. *Securities Investor Protection Act of 1991: Hearing on S. 1533 Before the Subcomm. on Securities of the Senate Comm. on Banking, Housing and Urban Affairs*, 102d Cong. 15–16 (1991) (statement of Richard C. Breeden, Chair, Sec. & Exch. Comm'n). But because litigation is expensive, investors must share litigation costs through a class action in order to actually receive that compensation, particularly small investors whose individual losses would be too small to justify the costs of litigation. Jill E. Fisch, *Measuring Efficiency in Corporate Law: The Role of Shareholder Primacy*, 31 J. Corp. L. 637, 667 (2006). Class actions also provide

3

significant deterrence for managerial misconduct by aggregating shareholders' losses. *Id.*; Barbara Black, *Eliminating Securities Fraud Class Actions Under the Radar*, 2009 Colum. Bus. L. Rev. 802, 808 & n.21. And class actions create an incentive for shareholders to actively monitor corporate managers to avoid judgments against the corporation that may affect stock prices. *See* Lawrence E. Mitchell, *The "Innocent Shareholder": An Essay on Compensation and Deterrence in Securities Class-Action Lawsuits*, 2009 Wis. L. Rev. 243, 287–91.

**B.     Professor Hal Scott, a vocal opponent of securities class actions, proposes to ban class-action litigation via corporate bylaws.**

But not everyone agrees that shareholders should be able to bring class actions. Hal Scott, a Harvard law professor emeritus, is a long-time opponent of securities class actions and is the controlling trustee of the plaintiff in this case, the Doris Behr 2012 Irrevocable Trust. *See, e.g.*, Susan Antila, *A Harvard Professor Filed a Shareholder Lawsuit to Restrict Shareholder Rights*, The Intercept, April 9, 2019, https://bit.ly/2Io5tOU (Gupta Decl., Ex. A); Hal Scott, Opinion, *The SEC's Misguided Attack on Shareholder Arbitration*, Wall Street J. (Feb. 21, 2019), https://on.wsj.com/2Ww1sw8 (Gupta Decl., Ex. B). On behalf of his trust, which owns 1,050 shares of Johnson & Johnson's stock, Scott proposed an amendment to Johnson & Johnson's bylaws in late 2018 that would run counter to the NYSE's rule and state and federal law, and put an end to shareholder class actions against Johnson & Johnson. The proposal would require shareholders' federal securities claims to "be exclusively and finally settled by arbitration" and provides "that any disputes subject to arbitration may not be brought as a class and may not be consolidated or joined." Compl. ¶ 16. Scott contends that "New Jersey law establishes that the bylaws of a corporation are to be interpreted as a contract between the corporation and its stockholders." Compl. ¶ 17. As far as we are aware, Johnson & Johnson is the first company Scott has targeted with such a proposal.

**C.      Johnson & Johnson excludes the proposed bylaw amendment and seeks a no-action letter from the Securities and Exchange Commission.**

After reviewing Scott's proposal, Johnson & Johnson decided that it could not implement the proposed amendment without violating federal law. Compl. Ex. 2. So it asked the Securities and Exchange Commission to issue a "no action" letter—a letter indicating that the SEC would take no action against the company if it omitted the amendment from its proxy materials.

In its request to the SEC, Johnson & Johnson explained its view that the proposal would require it to violate section 29(a) of the Securities Exchange Act of 1934 and "would be contrary to the public policy interests underlying the federal securities law" because it would "require investors who want to participate in the nation's equity markets to waive access to a judicial forum for vindication of federal or state law rights, where such a waiver is made through a corporate charter rather than through an individual investor's decision." *Id.* at 5 (quoting Thomas Riesenberg, *Arbitration and Corporate Governance*, 4 Insights 8 (1990)).

The company later filed a supplemental letter explaining that it would also be forced to violate New Jersey *state* law if it implemented the proposed bylaw amendment. Compl. Ex. 4. Among other things, Johnson & Johnson argued, relying on a legal opinion obtained from the law firm of Lowenstein Sandler LLP, that under the law of New Jersey (the state in which the company is incorporated), a court would likely conclude that shareholders who did not vote to approve a bylaw mandating arbitration "would not have provided the mutual assent required to enforce an arbitration agreement, as determined under customary principles of contract law." *Id.* at 3. The legal opinion also stated that a New Jersey state court would likely conclude that a claim arising from federal securities law "does not implicate the internal affairs of the corporation," and thus New Jersey corporations "may not lawfully mandate arbitration" of such claims "in their constitutive documents." *Id.* at 11. As a result, requiring arbitration for all shareholders would be

illegal under New Jersey law. And because a company's bylaw is illegal under federal law if it would require the company to violate state law, 17 C.F.R. § 240.14a-8(i)(1)–(2), the law of New Jersey provided a second, independent basis for Johnson & Johnson to exclude the proposed amendment.

**D.  The New Jersey Attorney General's office weighs in, and the SEC's no-action letter defers to its view that the proposal would violate state law.**

Two weeks after Johnson & Johnson's supplemental letter, the New Jersey Attorney General's office filed its own letter with the SEC stating that the proposed bylaw amendment would violate New Jersey law. The Attorney General explained that, under New Jersey law, corporate bylaws are generally limited to matters of the corporation's "internal concern." Compl. Ex. 6, at 3 (quoting *Lambert v. Fisherman's Dock Co-op., Inc.*, 61 N.J. 597, 600 (1972)).

The letter also reviewed Delaware law because "New Jersey courts frequently look" to Delaware case law "for guidance on matters of corporate law in the absence of controlling New Jersey authority." *Id.* Under recent precedent from the Delaware Court of Chancery, corporate charter and bylaw provisions "cannot bind a plaintiff to a particular forum when the claim does not involve rights or relationships that were established by or under Delaware's corporate law." *Id.* (quoting *Sciabacucchi v. Salzberg*, No. CV 2017-0931-JTL, 2018 WL 6719718 (Del. Ch. Dec. 19, 2018)). As a result, a forum-selection clause was void because it could not bind plaintiffs for claims arising out of federal law as opposed to state law. *See id.* Delaware has drawn a clear distinction between "internal affairs" (such as disputes arising from management's violations of fiduciary duties), which are the proper subject of bylaws, and "external relationships" (such as claims arising from deception in connection with the purchase of shares), which are beyond the reach of bylaws.

As the New Jersey Attorney General explained, this precedent is especially persuasive because in 2018, the New Jersey Legislature amended its laws to contain a provision identical to the Delaware provision at issue in *Sciabacucchi*. *See id.* And the Legislature had added a provision

6

authorizing corporate forum-selection clauses but had limited their applicability only to five express categories of claims, all of which concern "internal affairs" of the corporation. *See id.* (citing N.J.S.A. § 14A:2-9(5)(a)). The list does not include claims arising under federal securities laws. Based on New Jersey law, the Attorney General requested that the SEC take no action against Johnson & Johnson for excluding the proposed bylaw amendment.

Relying principally on the New Jersey Attorney General's opinion, the SEC issued a no-action letter on February 11, 2019. It concluded that the New Jersey Attorney General's interpretation of state law was "legally authoritative" and that the agency was "not in a position to question" his interpretation of New Jersey law. Compl. Ex. 8 at 2. As the SEC explained, "[t]o conclude otherwise would put the Company in a position of taking actions that the chief legal officer of its state of incorporation has determined to be illegal." *Id.* The SEC concluded that it did not need to reach the question whether the proposed bylaw amendment would require Johnson & Johnson to violate federal law. *Id.* Johnson & Johnson then excluded the proposal from its 2019 proxy materials.

**E.    Hal Scott's trust sues Johnson & Johnson, seeking to force the company to include his proposal in its proxy materials.**

On March 21, 2019—nearly six weeks after the SEC issued its no-action letter—Hal Scott's trust filed a complaint seeking a declaratory judgment that its proposal is legal and an order compelling Johnson & Johnson to issue supplemental proxy materials including the proposal. Compl. ¶ 44. Johnson & Johnson has indicated that it will move to dismiss the complaint. That motion is currently due on May 31, 2019.

**F.    Colorado PERA and CalPERS seek to intervene to safeguard shareholders' ability to sue Johnson & Johnson in class actions.**

As the litigation now stands, Johnson & Johnson is the only party to the lawsuit defending shareholders' right to sue Johnson & Johnson for violations of the securities laws. To resolve this

apparent anomaly, two major shareholders of Johnson & Johnson are now seeking to intervene at the earliest opportunity—before Johnson & Johnson even responds to the complaint. The proposed intervenors, Colorado PERA and CalPERS, seek to protect their interest as shareholders in the availability of class-action securities litigation against Johnson & Johnson.

**CalPERS.** The California Public Employees' Retirement System is the nation's largest state public pension fund, serving more than 1.9 million members. *See* Bienvenue Decl. ¶ 2. Among its many holdings, CalPERS owns 8,368,519 shares of Johnson & Johnson stock as of March 31, 2019. Bienvenue Decl. ¶ 2 & Ex. A.

Because CalPERS is such a large stockholder of many corporations, it has participated in numerous securities-fraud class-action lawsuits and is regularly appointed as class representative in such suits to defend its and other stockholders' interests. Bienvenue Decl. ¶ 4; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268–70 (3d Cir. 2001) (affirming district court's conclusion that CalPERS would adequately represent a class of shareholders as lead plaintiff); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55 (S.D.N.Y. 2009); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094 (D. Minn. 2009); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004). CalPERS also regularly advocates for its interest in shareholder suits by filing briefs in federal court explaining the importance of the class-action mechanism for securities litigation. Bienvenue Decl. ¶ 6 & Exs. C & D. It has also advocated against forcing shareholders to arbitrate securities claims, most recently by filing a letter with the SEC in 2018 cautioning the agency against adopting a favorable view of such arbitration clauses. Bienvenue Decl. ¶ 5 & Ex. B. The organization's interest in protecting class-action litigation is a central part of its mission: One of its Governance and Sustainability Principles is that companies should not "attempt to bar

shareowners from the courts through the introduction of forced arbitration clauses." Bienvenue Decl. ¶ 7 & Ex. E at 11.

***Colorado PERA.*** The Colorado Public Employees' Retirement Association is the twenty-fourth largest public pension plan in the nation with approximately $48 billion in assets and over 600,000 plan participants and beneficiaries—including teachers, state troopers, and other public employees. Franklin Decl. ¶¶ 2, 4. Colorado PERA has fulfilled its fiduciary duty to protect the retirement security of its plan participants and beneficiaries by serving as lead plaintiff in several security fraud class action suits. Franklin Decl. ¶ 7. Colorado PERA is one of the largest shareholders of Johnson & Johnson, currently possessing 1,906,754 shares of its stock. Franklin Decl. ¶ 3.

Colorado PERA "has long recognized the importance of securities litigation, and specifically securities class actions, due to the role it plays in creating a culture of accountability and deterring corporate fraud." Franklin Decl. Ex. D. Colorado PERA has publicly opposed the use of arbitration in corporate bylaws, including sending a letter in June 2018 to SEC Chair Jay Clayton explaining why arbitration does not adequately protect shareholder rights and encouraging the Chair to undertake notice-and-comment rulemaking before the SEC changes its long-held position against forced arbitration in initial public offerings. *See id.*

Because they purchased Johnson & Johnson stock within the class period, both Colorado PERA and CalPERS are members of the putative class in an ongoing case against Johnson & Johnson in this District. Bienvenue Decl. ¶ 3. In *Hall v. Johnson & Johnson*, the plaintiff asserts that Johnson & Johnson engaged in a decades-long fraud by knowingly issuing false and misleading statements about its talc and baby powder products, which contain cancer-causing asbestos. *See*

Compl. at 1–2, *Hall v. Johnson & Johnson*, No. 18-cv-1833-FLW-TJB (D.N.J. Feb. 28, 2019), ECF No. 33. Johnson & Johnson disputes these claims.

## ARGUMENT

The proposed intervenors, Colorado PERA and CalPERS, are entitled to intervene as of right under Rule 24(a) to protect their interest as shareholders in bringing suit against Johnson & Johnson for violations of the securities laws. Unless they are allowed to intervene, Johnson & Johnson *alone* will be tasked with protecting shareholders' interest in policing Johnson & Johnson's conduct through class-action litigation against Johnson & Johnson.

Alternatively, the Court should exercise its broad discretion to permit Colorado PERA and CalPERS to intervene under Rule 24(b)(2) because the applicants' arguments share a common question of law with the current case; intervention will cause no delay or prejudice; and intervention is necessary to protect shareholders' significant stake in this dispute.

## I.     Colorado PERA and CalPERS are entitled to intervene as of right under Federal Rule of Civil Procedure 24(A).

Colorado PERA and CalPERS satisfy all four of the criteria required for intervention under Federal Rule of Civil Procedure 24(a)(2): "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co. v. Treesdale Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).

Courts in the Third Circuit are instructed to interpret these requirements liberally and in favor of intervention: Rule 24(a)(2)'s criteria should be applied with "elasticity," and "pragmatism is a substantial factor that must be considered." *Kleissler*, 157 F.3d at 970. That is because "[r]igid rules . . . contravene a major premise of intervention—the protection of third parties affected by

10

pending litigation." *Id.* at 971. And the Third Circuit has espoused a "policy preference which . . . favors intervention over subsequent collateral attack" in order to preserve judicial efficiency. *Id.* at 970 (quoting *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992)).

### A.    The motion to intervene is timely.

There can be little doubt that Colorado PERA and CalPERS intervened in a timely manner. While there is no definite rule about when a motion to intervene is timely, the Third Circuit has identified three factors "to aid evaluation of the timeliness issue": (1) the stage of the proceedings; (2) the prejudice that delay may cause the parties; and (3) the reason for any delay. *In re Fine Paper Antitrust Litig.,* 695 F.2d 494, 500 (3d Cir. 1982). Here, intervention is timely because the litigation is still in its earliest stage and intervention will cause no prejudice or delay.

The complaint in this case was filed on March 21, 2019—less than two months ago. A responsive pleading has not yet been filed. Courts in this Circuit regularly recognize that a motion to intervene is timely under similar circumstances. *See, e.g.*, *Glover v. Ferrero USA, Inc.*, 2011 WL 5007805, at *3 (D.N.J. Oct. 20, 2011) (concluding that intervention "will cause no delay to the parties" because the motion was filed "a little more than two months" after the complaint); *Michaels Stores v. Castle Ridge Plaza Assocs.*, 6 F. Supp. 2d 360, 364 (D.N.J. 1998) (concluding that a motion to intervene was timely when the "case was filed less than three months ago and is now only in its preliminary stages"); *Powell v. Ridge*, 1998 WL 599387, at *2 (E.D. Pa. Sept. 10, 1998) (concluding that intervention before a responsive pleading occurs is "at such an early stage of litigation" that there is "little, if any, prejudice" to the parties).

In addition, intervention at this early stage will not delay the proceedings or prejudice the parties. Colorado PERA and CalPERS are prepared to file a brief on the merits by May 31—the

same day that the defendant's motion to dismiss is due.[2] The schedule this Court has set will therefore not be delayed by even one day if intervention is granted. And because this case presents only purely legal issues, intervention will not slow down any future proceeding. The additional parties will not multiply any discovery burden because discovery is unnecessary here. It is hard to imagine circumstances in which a motion to intervene would cause less prejudice or delay.

In short, this motion is being filed at the earliest step of the litigation process and will not delay or impair the proceedings as a practical matter. The motion is therefore timely and satisfies the first factor of Rule 24(a)(2).

**B.      Colorado PERA and CalPERS have a substantial interest in this litigation.**

Likewise, the proposed intervenors easily satisfy the requirement that they have "a sufficient interest" in the litigation. This requirement is not particularly onerous. The Third Circuit has explained that a sufficient interest is "one that is significantly protectable." *Liberty Mut. Ins. Co.*, 419 F.3d at 220 (quoting *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)). In other words, the interest must be "legally cognizable" and not of a "general and indefinite character." *Id.* But a "sufficient interest" does *not* need to rise to the level of an injury creating standing to sue: It is black-letter law that, when parties "move[] to intervene as defendants and seek the same relief as the [defendant], they need not demonstrate Article III standing."

---

[2] Rule 24(c) also requires that the proposed intervenor file a proposed pleading setting forth its claim or defense with a motion to intervene. The purpose of Rule 24(c) is to "provid[e] notice to the existing parties of the basis and nature of the intervener's claim." *PPL Energyplus, LLC v. Solomon*, 2011WL 13128622, at *3 (D.N.J. July 19, 2011). As a result, when, as here, a motion to intervene "contain[s] considerable detail" that puts the parties "on notice as to [the intervenors'] desired role in this litigation," courts allow intervention absent a proposed pleading." *Id.* In this case, the Colorado PERA and CalPERS have put the parties on notice that they intend to defend against the plaintiff's claims. And the proposed intervenors will be filing their own motion to dismiss on the same schedule as Johnson & Johnson's motion, which will be before the return date of this motion to intervene.

*Pennsylvania v. President of the United States*, 888 F.3d 52, 57 n.2 (3d Cir. 2018). Instead, the proposed intervenors must merely show that they have at least a "considerable stake" in the outcome. *Kleissler*, 157 F.3d at 973.

Colorado PERA and CalPERS have a direct and substantial interest in this lawsuit. They are large shareholders of Johnson & Johnson, and accordingly, they share the interest that the far smaller plaintiff shareholder relied on to bring this suit in the first place—namely, an interest in policing the legality of Johnson & Johnson's actions related to proxy statements and any alleged "contract right" stemming from a corporation's bylaws. Indeed, as large shareholders, Colorado PERA and CalPERS have a great stake in vindicating any interest implicated by this case. *See In re Cendant Corp. Litig.*, 264 F.3d at 244, 264 (recognizing that in passing the Private Securities Litigation Reform Act, Congress intended to "increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." (quoting H.R. Rep. No. 104-327, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 737)). The proposed intervenors also have an interest as putative class members in ongoing litigation against Johnson & Johnson.

**First,** the plaintiff's complaint asserts a violation of section 14(a) of the Exchange Act based on the plaintiff's claimed interest as a shareholder in ensuring that Johnson & Johnson complies with the laws governing proxy solicitations. *See* Compl. ¶¶ 35–36. That interest has been interpreted as protecting a shareholder's right to be presented at shareholder meetings with matters "that are 'proper subjects for stockholders' action under the laws of the state under which [the company] was organized.'" *Trinity Wall Street v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 335 (3d Cir. 2015) (quoting *Proposed Amendments to Rule 14a-8 under the Securities Exchange Act of 1934 Relating to Proposals by Security*

*Holders*, SEC Release No. 19135, 1982 WL 600869). But if shareholders are protected from the *denial* of the ability to consider a *proper* matter of shareholder concern, they are also protected from the *acceptance* of a matter of *improper* concern—namely, an illegal proposal that may be excluded under 17 C.F.R. § 240.14a-8. *See Stahl v. Gibraltar Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992) (holding that a shareholder's interest in suing over misleading proxy statements does not turn on a reliance interest because it would be "incongruous to deny standing to those shareholders who ferret out the misstatements but grant it to those who were beguiled"). The proxy rule protects "full disclosure to investors" and investors' right to consider "proper subjects" at shareholder meetings. *Trinity Wall Street*, 792 F.3d at 335. Thus, the proposed intervenors have a substantial interest in ensuring that they (and other shareholders) are not presented at shareholder meetings with misleading or improper proposals like the one offered by the plaintiff, which, if approved, would cause Johnson & Johnson to violate state and federal law. Colorado PERA's and CalPERS' ability to protect this interest is as worthy of protection as the plaintiff's right to seek the proposal's inclusion.

**Second,** the complaint advances the theory that a corporation's bylaws should be "interpreted as a contract between the corporation and its stockholders" as a justification for why arbitration could govern shareholder disputes. Compl. ¶ 17. Colorado PERA and CalPERS believe that this theory is wrong and are eager to explain why. *See generally* Ann M. Lipton, *Manufactured Consent: The Problem of Arbitration Clauses in Corporate Charters and Bylaws*, 104 Geo. L.J. 583 (2016). But the important point for present purposes is that, on the plaintiff's own theory— that the bylaws *are* an enforceable contract between the corporation and its shareholders for purposes of forced arbitration—Colorado PERA and CalPERS have a legally protectable interest in the contents of any such "contract." *See, e.g., Kleissler*, 157 F.3d at 973 (concluding that, under

14

Third Circuit precedent, "contractual relations" alone are a sufficient interest to warrant intervention); *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("Courts . . . have found that an applicant has a sufficient interest to intervene when . . . the contractual rights of the applicant may be affected by a proposed remedy"). This bylaws-as-contract theory is at the heart of the plaintiff's case. And the question whether a contract would exist at all is of substantial interest to Colorado PERA and CalPERS as alleged "parties" to any such "contract." Hence, this is indisputably a case in which "the contractual rights of the applicant[s] may be affected by a proposed remedy." *Id.*

**Third,** Colorado PERA and CalPERS have an interest in their legal right to bring or participate in class-action litigation against Johnson & Johnson for securities-law violations, which could be affected by any judgment in this case. The bylaw amendment that the plaintiff proposed would require shareholders, including Colorado PERA and CalPERS, to arbitrate any securities claims on an individual basis and to waive their right to do so through the class-action mechanism. Compl. ¶ 16. A shareholder has an interest in challenging restrictions on suits against a company. *See Bushansky v. Armacost*, 2014 WL 5335255, at *2 (N.D. Cal. Oct. 16, 2014) (allowing shareholder to intervene to challenge illegally adopted forum-selection bylaw).

And the proposed intervenors' interest in protecting class-action litigation is particularly concrete here: Colorado PERA and CalPERS are putative class members in a suit recently filed against Johnson & Johnson for violations of the Exchange Act based on alleged misleading statements about talc powder. *See* Compl., *Hall v. Johnson & Johnson*, No. 3:18-cv-1833-FLW-TJB (D.N.J. Feb. 28, 2019), ECF No. 33. Courts have repeatedly recognized that absent class members have protectable interests in their claims in a variety of contexts. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–29 (1997) (outlining the importance of reviewing a class-action settlement in order to protect the interests of absent class members); *Koby v. ARS Nat'l Servs., Inc.*,

15

846 F.3d 1071, 1078 (9th Cir. 2018) (recognizing absent class members' interest in ongoing litigation, including their interest "in the exercise of the right conferred by Article III" to have a court decide the case). The same is true here. Colorado PERA and CalPERS have an interest in their claims in the ongoing litigation against Johnson & Johnson, and the outcome of this suit could affect the course of that litigation and whether it can proceed at all (and, for that matter, whether any future class actions may be brought against Johnson & Johnson).

The proposed intervenors have a cognizable interest in this litigation. Any one of the interests described above would alone be sufficient to warrant intervention. All three taken together place it beyond dispute that intervention should be allowed here as of right.

### C.     Colorado PERA's and CalPERS' interests may be impaired by the disposition of this case.

There is plainly a threat that the proposed intervenors' interests will be impaired by the resolution of this case—particularly if this Court grants declaratory judgment in the plaintiff's favor. The standard to satisfy this factor of the intervention analysis is not high: an applicant needs to demonstrate only "that [its] legal interests *may* be affected or impaired[ ] as a practical matter by the disposition of the action." *Pennsylvania*, 888 F.3d at 59 (alterations in original) (emphasis added). While the threat must be "tangible" and not speculative, *id.*, an applicant "need not . . . prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief," *Brody*, 957 F.2d at 1123. It is enough to show that the intervenor might be affected by the "stare decisis effect" of a decision in the present case or would be impaired by any "proposed remedy." *Pennsylvania*, 888 F.3d at 59.

All of the rights described above may be impaired by resolution of this case. If this Court (or an appellate court) issues a declaration in favor of the plaintiff, it will impede the proposed intervenors' interest in the legality and content of Johnson & Johnson's bylaws. Such a ruling would

require Johnson & Johnson to put the proposed amendment in its proxy materials. And although the proposed intervenors might be able to sue based on their belief that the proposed bylaw is contrary to state and federal law, the *stare decisis* effect of this decision would severely disadvantage Colorado PERA and CalPERS in any possible subsequent litigation.

And if the proposed amendment is included in Johnson & Johnson's proxy materials, it may impede the current class-action litigation in which Colorado PERA and CalPERS are putative class members, as well as any future litigation brought by the intervenors. If the amendment passes, Johnson & Johnson may well argue that the litigation must cease and the claims must instead be brought in individual arbitrations under the new bylaw while investors seek to challenge the legality of that bylaw. The *Hall* case could be delayed to allow satellite litigation about the effect of the new bylaw on a preexisting class-action suit. Colorado PERA and CalPERS, as well as other shareholders, risk losing any time or money they invest in litigation against Johnson & Johnson because of the looming threat of the proposed amendment. The mere existence of proposed amendment thus threatens to impair the intervenors' ability to vindicate their rights through suit and recover in their current suit.

Because the outcome of this suit will tangibly affect Colorado PERA's and CalPERS' right to challenge the illegal proposed amendment in future litigation and more broadly threatens their right to recover in current and future lawsuits against Johnson & Johnson, they are entitled to intervene in this suit under Rule 24(a)(2).

### D.  Johnson & Johnson may not adequately represent the interests of Colorado PERA and CalPERS.

Because Johnson & Johnson's interests in this case are different from Colorado PERA's and CalPERS' interests, the defendant may not adequately represent the proposed intervenors. Under Third Circuit precedent, the burden of demonstrating that the current party is inadequate is

generally "treated as minimal." *Pennsylvania*, 888 F.3d at 60. Proposed intervenors need to show only "that representation of [the intervenor's] interest 'may be' inadequate." *Id.* (emphasis omitted). To satisfy this factor, the applicant may show that "the existing party cannot devote proper attention to the applicant's interests." *Id.*

Thus, when an intervenor has any interest that diverges from the party's interest, intervention is likely proper. *See Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light."). The Third Circuit has accordingly held that an applicant is entitled to intervene when it can show that its interests are "inextricably intertwined with, but distinct from" the present parties such that they may seek different settlements or might reach different conclusions about whether to appeal an adverse judgment. *Kleissler*, 157 F.3d at 974; *see also N.J. Media Grp. Inc. v. United States*, 836 F.3d 421, 427–28 (3d Cir. 2016) (recognizing that district court allowed intervention because the government was no longer protecting a cooperator's rights when it decided not to appeal an adverse order). And intervention should be allowed where the intervenor's interest is unlikely to change but the current party's position is more flexible and subject to change. *See Kleissler*, 157 F.3d at 974 ("Although it is unlikely that the intervenors' economic interest will change, it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts.").

In this case, although Johnson & Johnson currently opposes the plaintiff's requested relief, it does not directly represent the proposed intervenors' interests. To be sure, in ordinary litigation against a corporation (where the corporation's interests and its shareholders' interests are aligned), a corporation may represent the shareholders' interests. But in the highly unusual situation presented by this lawsuit, Colorado PERA and CalPERS believe that Johnson & Johnson is an

inadequate representative. At bottom, Colorado PERA and CalPERS want to protect their ability to sue Johnson & Johnson in court using the class-action mechanism in the *Hall* case and in future cases if Johnson & Johnson violates federal securities laws. Johnson & Johnson does not adequately protect that interest: The defendant in a class-action case cannot adequately represent the interests of the plaintiffs in that same class-action case, or in potential future class actions. *See Brody*, 957 F.2d at 1124 (concluding that intervenors had demonstrated inadequacy of representation because they "seek to maximize their freedom of speech and to avoid censorship by the very school officials who are purported to represent their interests in this litigation"). Thus, although Colorado PERA and CalPERS seek the same *relief* as Johnson & Johnson, their *interests* are not the same.

The divergence of the defendant's and the proposed intervenors' interests is not merely abstract. It may affect major litigation decisions, primarily whether to appeal. Simply put, although Johnson & Johnson has indicated that it intends to defend its decision to exclude the plaintiff trust's proposal from the 2019 proxy materials, Colorado PERA and CalPERS cannot assume that Johnson & Johnson will decide to appeal an adverse judgment at any stage of the proceedings. And although Johnson & Johnson maintains that the proposed amendment is illegal, it is possible that Johnson & Johnson might conclude sometime in the future that it will benefit from passage of the proposal, which would significantly curtail shareholders' rights against the company. This possibility justifies intervention. *See, e.g.*, *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017) (per curiam) (holding that representation was inadequate where there was "equivocation" about whether the present party would appeal an adverse ruling). Colorado PERA and CalPERS are shareholders whose only interest in the case is to defend their and other shareholders' rights.

What's more, although Johnson & Johnson currently seeks to exclude the proposed amendment, it cannot guarantee that it will continue to do so throughout the litigation. Johnson & Johnson is a major corporation that is managed by its executive officers and governed by a board of directors. Changes in the composition or policies of the executive officers or the board could change the corporation's policy and therefore determine whether it continues to seek exclusion of the plaintiff's proposal. In contrast, the proposed intervenors have a fixed interest in protecting their rights as shareholders, and they should be allowed to intervene to protect that interest. *See Kleissler*, 157 F.3d at 974 (recognizing that a party that may change policy goals over time is inadequate to represent an organization with a fixed, financial stake in the case).

Colorado PERA and CalPERS believe that the likelihood that Johnson & Johnson's interests may diverge from their own is elevated given Johnson & Johnson's membership in the U.S. Chamber of Commerce—an organization that, as recently as last month, presented congressional testimony advocating that shareholders and corporations be permitted to propose and adopt forced-arbitration bylaws. *See, e.g.*, Statement of the U.S. Chamber of Commerce, *Putting Investors First: Reviewing Proposals to Hold Executives Accountabl*e 15–16 (Testimony before the U.S. House of Representatives, Committee on Financial Services), Apr. 3, 2019 (Decl. of Deepak Gupta, Ex. A). Indeed, Johnson & Johnson has donated millions of dollars to the Chamber's Institute of Legal Reform, which lobbies against class-action litigation and in favor of forced arbitration. *See* Decl. of Deepak Gupta, Ex. B.

Simply put, the best representatives of the shareholders' interests are the shareholders. These shareholders should not be forced to rely on a corporation to defend the shareholders' right to sue that corporation. Johnson & Johnson simply cannot share the proposed intervenors' interest in protecting that right, and accordingly, no matter how ably its lawyers litigate the case, Johnson

& Johnson cannot adequately protect the interests of shareholders like Colorado PERA and CalPERS. Intervention is thus warranted.

## II.    In the alternative, Colorado PERA and CalPERS should be granted permissive intervention under Rule 24(b).

Even if the Court concludes that it cannot grant intervention as of right under 24(a), it should grant Colorado PERA and CalPERS permissive intervention under Rule 24(b). Colorado PERA and CalPERS seek to defend the claims brought by the plaintiff and ensure that the Court has before it all relevant legal arguments to make a decision. Accordingly, the requirements of Rule 24(b) are satisfied.

Permissive intervention is available under Rule 24(b)(2) when an applicant "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(2). The district court "is afforded broad discretion in deciding the propriety of permissive intervention." *ACRA Turf, LLC v. Zanzucci*, 2013 WL 776236, at *3 (D.N.J. Feb. 27, 2013).

The standards for permissive intervention are easily satisfied in this case. *First*, intervention will not unduly delay or prejudice the parties in this case—it will not delay the proceedings *at all*, as explained in Part I. *Second*, the claims and defenses Colorado PERA and CalPERS seek to litigate share a common question of law or fact with the litigation. In fact, the proposed intervenors seek to litigate the illegality of the proposed amendment under state and federal law—the exact legal issue raised by the plaintiff in its complaint. This fits well within the definition of a common question of law. *See, e.g.*, *AMS Constr. Co. v. Reliance Ins. Co.*, 2004 WL 2600792, at *6 (E.D. Pa. Nov. 15, 2004) (granting permissive intervention because the intervenor "shares both its claims and defenses with Defendant in this case"). Accordingly, permissive intervention is allowed under Rule 24(b)(2).

Permissive intervention is also particularly appropriate here. As explained above, allowing Colorado PERA and CalPERS to intervene would ensure that the shareholders' interest in their right to sue Johnson & Johnson will be properly represented in the case and that their appellate rights will be preserved in the event of an adverse ruling. And allowing them to intervene will aid the Court by making sure that all relevant arguments are presented. *See, e.g.*, *Nat'l Wildlife Fed. v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983) (recognizing that permissive intervention is desirable where it "will significantly contribute to the full development of the underlying factual issues").

The Private Securities Litigation Reform Act of 1995, 15 U.S.C. 78u-4(a)(3), further supports intervention here. Congress recognized that, when a court must determine which investors should lead securities class actions, the presumption should be that the largest investors should be appointed lead plaintiff. While this case is not a class action, it too seeks relief that would affect not just the named plaintiff, but all Johnson & Johnson investors.

In short, the applicants here satisfy the criteria for permissive intervention. Allowing them to intervene will not complicate or delay the case. And permitting intervention will ensure that shareholders have a role in defending their rights to bring securities class actions against Johnson & Johnson rather than allowing Johnson & Johnson alone to defend those rights on shareholders' behalf. It also will facilitate this Court's ultimate decision. Accordingly, the Court should permit Colorado PERA and CalPERS to intervene under Rule 24(b)(2).

## CONCLUSION

The proposed intervenors' motion to intervene should be granted.

Respectfully submitted,

/s/ James E. Cecchi

MARC I. GROSS, ESQ.                         JAMES E. CECCHI
POMERANTZ LLP                               LINDSEY H. TAYLOR
600 Third Avenue                            CARELLA, BYRNE, CECCHI, OLSTEIN,
New York, New York, 10016                   BRODY & AGNELLO, P.C.
(212) 661-1100                              5 Becker Farm Road
                                            Roseland, New Jersey 07068
SALVATORE J. GRAZIANO                        (973) 994-1700
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas                 DEEPAK GUPTA (*pro hac vice*)
New York, NY  10019                         ALEXANDRIA TWINEM *
(212) 554-1400                              GUPTA WESSLER PLLC
                                            1900 L Street, NW, Suite 312
                                            Washington, DC 20036
                                            (202) 888-1741

                                            *Admitted in New York only. Practicing
                                            under DC bar member supervision.

May 23, 2019                                *Counsel for Proposed Intervenors/Defendants The
                                            California Public Employees' Retirement System and
                                            The Colorado Public Employees' Retirement
                                            Association*

23

## CERTIFICATE OF SERVICE

I certify that on May 23, 2019, I served this document via CM/ECF upon:

Walter Stephen Zimolong
Zimolong LLC
PO Box 552
Suite 1210
Villanova, PA 19085
215-665-0842 (phone)
215-689-3404 (fax)
wally@zimolonglaw.com

*Counsel for the Plaintiff*

Justin Taylor Quinn
Robinson Miller LLC
One Newark Center
19th Floor
Newark, NJ 07102
973-690-5400 (phone)
jquinn@rwmlegal.com

Andrew Muscato
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000 (phone)
(212) 735-2000 (fax)
andrew.muscato@skadden.com

*Counsel for the Defendant*

*/s/ James E. Cecchi*
James E. Cecchi
*Counsel for Proposed Intervenors/Defendants The
California Public Employees' Retirement System and
The Colorado Public Employees' Retirement Association*