# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE DORIS BEHR 2012 IRREVOCABLE TRUST,
*Plaintiff,*

v.

JOHNSON & JOHNSON,
*Defendant,*

and

CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM and COLORADO PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION,
*Proposed Intervenors-Defendants.*

Case No. 3:19-cv-08828 (MAS)(LHG)

**Reply in Support of California Public Employees' Retirement System and Colorado Public Employees' Retirement Association's Motion to Dismiss**

MARC I. GROSS
JEREMY A. LIEBERMAN
JENNIFER PAFITI
MICHAEL GRUNFELD
POMERANTZ LLP
600 Third Avenue
New York, NY 10016
(212) 661-1100

SALVATORE J. GRAZIANO
HANNAH ROSS
JAI K. CHANDRASEKHAR
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 554-1400

July 29, 2019

DEEPAK GUPTA
MATTHEW WESSLER
ALEXANDRIA TWINEM
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741

JAMES E. CECCHI
LINDSEY H. TAYLOR
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Counsel for Proposed Intervenors California Public Employees' Retirement System and Colorado Public Employees' Retirement Association*

# TABLE OF CONTENTS

Table of authorities .................................................................................................. ii

I.     The proposed bylaw would cause Johnson & Johnson to violate state law. ....................... 2

    A.    The text, context, and authoritative interpretation of N.J.S.A. § 14A:2-9(4) demonstrate that New Jersey corporate bylaws are limited to matters of a corporation's internal affairs. ................................................................................ 2

    B.    The trust's textual argument is unpersuasive. ........................................... 3

    C.    The trust's attempts to distinguish Delaware precedent fail. .................... 4

II.    The Federal Arbitration Act does not preempt New Jersey law. .......................... 7

    A.    The FAA does not apply to corporate bylaws. ........................................ 7

        1.    Corporate bylaws are not "contracts evidencing a transaction" under the FAA. ........................................................................................ 7

        2.    Securities-fraud claims are not controversies that "aris[e]" out of corporate bylaws. ...................................................................... 9

    B.    The FAA does not preempt generally applicable New Jersey law. ....................... 10

i

# TABLE OF AUTHORITIES

## Cases

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) ................................................................................................ 11

*ATP Tour, Inc. v. Deutscher Tennis Bund,*
   91 A.3d 554 (Del. 2014)........................................................................................ 2, 7

*Blair v. Scott Specialty Gases,*
   283 F.3d 595 (3d Cir. 2002)....................................................................................... 9

*Boilermakers Local 154 Retirement Fund v. Chevron Corp.,*
   73 A.3d 934 (Del. Ch. 2013) ............................................................................. 2, 4, 5

*Coors Brewing Co. v. Molson Breweries,*
   51 F.3d 1511 (10th Cir. 1995)................................................................................... 10

*Hazen v. Leach,*
   2006 WL 1388813 (N.J. Super. App. Div. May 22, 2006) .......................................... 9

*IBS Financial Corp. v. Seidman & Assocs., L.L.C.,*
   136 F.3d 940 (3d Cir. 1998)........................................................................................ 3

*In re J.S.,*
   133 A.3d 282 (N.J. Super. App. Div. 2016) ............................................................... 4

*James v. Global TelLink Corp,*
   852 F.3d 262 (3d Cir. 2017)....................................................................................... 9

*Kindred Nursing Centers Ltd. v. Clark,*
   137 S. Ct. 1421 (2017) ............................................................................................. 10

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,*
   560 F.3d 156 (3d Cir. 2009)................................................................................... 8, 9

*Lambert v. Fishermen's Dock Cooperative, Inc.,*
   61 N.J. 596 (1972)...................................................................................................... 3

*Lamps Plus, Inc. v. Varela,*
   139 S. Ct. 1407 (2019)................................................................................................ 7

*National Industries Group (Holding) v. Carlyle Investment Management L.L.C.,*
   67 A.3d 373 (Del. 2013).............................................................................................. 6

*Scherk v. Alberto–Culver Co.,*
   417 U.S. 506 (1974) .................................................................................................... 6

*Sciabacucchi v. Salzberg,*
 2018 WL 6719718 (Del. Ch. Dec. 19, 2018) ..........................................................3, 4, 6, 10

**Statutes, Regulations, and Rules**

9 U.S.C. § 2 ................................................................................................................. 10

N.J.S.A. § 14A:2-9(4) .................................................................................................. 2, 3, 4

N.J.S.A. § 14A:2-9(5) .....................................................................................................3

**Other Authorities**

James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* (3d ed. 2018) .......................2

Letter from James D. Cox, et al., to Mary Jo White, Oct. 30, 2013,
 https://bit.ly/2Bb7Na7 ..................................................................................................2

Joseph Grundfest & Kristen Savelle, *The Brouhaha over Intra-Corporate Forum Selection
 Provisions: A Legal, Economic, and Political Analysis*, 68 Bus. Law. 325 (2013) ...................................2, 5

Jacob Hale Russell et al., *Mandatory Securities Arbitration's Impermissibility Under State Corporate
 Law: An Analysis of the Johnson & Johnson Shareholder Proposal* (Stanford Rock Center For
 Corporate Governance Working Paper No. 237, 2019) .............................................................2

The plaintiff trust's proposed bylaw is illegal under New Jersey law and thus excludable under SEC Rule 14a-8. In New Jersey, only matters concerning the corporation's internal affairs, subject to enforcement by the state under its corporate law, may be included. This proposition is well supported by centuries of law governing corporations and has been endorsed by courts including the New Jersey Supreme Court, by the New Jersey Attorney General, and by scores of leading corporate-law scholars. In opposing the motions to dismiss, the trust contends that all of these authorities have misread New Jersey's statute (and Delaware's nearly identical statute). But while the trust's brief is full of bravado, it offers no support for its broad reading of the statute other than its own say-so. This Court should decline to follow the trust down an uncharted path that would expand the appropriate subjects for corporate bylaws to literally anything related to the company in any way. Instead, it should follow the overwhelming weight of authority, scholarly consensus, and the authoritative view of the New Jersey Attorney General.

The trust's second argument, that the Federal Arbitration Act preempts New Jersey's law, fares no better. Simply put: The FAA does not apply to corporate bylaws. The trust claims that bylaws are subject to the FAA because they are often treated like "contracts" for purposes of corporate law. But it has no answer to the binding Third Circuit precedent, in this precise context, holding that bylaws lack the manifestation of mutual assent needed to form a true contract and that arbitration clauses in bylaws are therefore unenforceable. The Court need go no further to dismiss this case. But if it does, it should conclude that the FAA is also inapplicable for two additional reasons: first, because a securities-fraud claim does not "arise under" corporate bylaws, and second, because New Jersey's corporate law is generally applicable and hence excepted from FAA preemption. In short, the trust has no plausible argument that Johnson & Johnson improperly excluded its proposed bylaw, and this case should be dismissed.

1

## I.    The proposed bylaw would cause Johnson & Johnson to violate state law.

### A.    The text, context, and authoritative interpretation of N.J.S.A. § 14A:2-9(4) demonstrate that New Jersey corporate bylaws are limited to matters of a corporation's internal affairs.

As we explained in our motion to dismiss, under New Jersey state law, a corporation's foundational documents, including its bylaws, may be related only to matters of internal concern to the corporation. *See* Motion to Dismiss of CalPERS and Colorado PERA ("CalPERS MTD"), Dkt. No. 24, at 10–11. Specifically, corporate bylaws may only pertain to "the business of the corporation, the conduct of its affairs, and its rights or power or the rights or power of its shareholders, directors, officers or employees." N.J.S.A. § 14A:2-9(4). The limitation on corporate bylaws is well established—it is part and parcel of the internal affairs doctrine and dates back to English law and ancient Rome. CalPERS MTD at 10–11. Under this doctrine, the state in which a corporation is incorporated governs all matters related to the internal affairs of the corporation under that state's corporate law, but the state has *no jurisdiction* to control the corporation's actions that do not arise under state corporate law, and thus subjects not governed by state corporate law cannot be governed by a corporation's charter or bylaws.[1] *See, e.g.*, Jacob Hale Russell et al., *Mandatory Securities Arbitration's Impermissibility Under State Corporate Law: An Analysis of the Johnson & Johnson Shareholder Proposal* (Stanford Rock Ctr. For Corp. Governance Working Paper No. 237, 2019). Because the trust's proposed bylaw amendment would violate this basic state-law rule, Johnson & Johnson properly excluded it under SEC Rule 14a-8.

---

[1] Our initial motion to dismiss cites numerous authorities recognizing this application of the internal affairs doctrine, none of which are adequately rebutted (or in some cases even acknowledged) in the trust's opposition. Those authorities include *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554 (Del. 2014); *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013); Joseph Grundfest & Kristen Savelle, *The Brouhaha over Intra-Corporate Forum Selection Provisions: A Legal, Economic, and Political Analysis*, 68 Bus. Law. 325 (2013); James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* (3d ed. 2018); and Letter from James D. Cox, et al., to Mary Jo White, Oct. 30, 2013, https://bit.ly/2Bb7Na7.

The New Jersey Supreme Court recognized this principle decades ago, stating that bylaw amendments should be limited to "matters of internal concern." *Lambert v. Fishermen's Dock Co-op., Inc.*, 61 N.J. 596, 600 (1972). And it was against this extensive legal backdrop that the New Jersey Legislature amended N.J.S.A. § 14A:2-9(4) in 2018 to limit the subject of corporate bylaws to matters of internal concern. CalPERS MTD at 12. At the same time, the legislature expressly limited forum-selection clauses in corporate documents to claims "governed by the internal affairs or an analogous doctrine." N.J.S.A. § 14A:2-9(5). The effect of these statutory provisions is clear. A New Jersey corporation cannot amend its bylaws to include any provision—including an arbitration provision—related to claims not brought under New Jersey corporate law. All the relevant authorities agree. The New Jersey Attorney General himself has interpreted N.J.S.A. § 14A:2-9(4) to limit the subject of corporate bylaws to only matters of internal affairs. CalPERS MTD at 6–7, 14; *see also* N.J. Attorney General Amicus Br., Dkt. No. 35-4, at 3–20. And the Delaware Chancery Court has interpreted the nearly identical Delaware statute to limit a corporation's founding documents to matters of internal affairs. CalPERS MTD at 12–13 (discussing *Sciabacucchi v. Salzberg*, 2018 WL 6719718 (Del. Ch. Dec. 19, 2018)).[2] Because New Jersey law precludes a bylaw related to matters external to the corporation's affairs, Johnson & Johnson properly excluded the trust's proposed bylaw.

## B.    The trust's textual argument is unpersuasive.

The trust attempts to sidestep this settled authority by arguing that N.J.S.A. § 14A:2-9(4) is written broadly. Pl. Response at 1–6. But what matters are the specific words used in the statute.

---

[2] The trust argues at length that Johnson & Johnson is not "subject" to Delaware court decisions. Pl. Response, Dkt. No. 38, at 15–20. But Johnson & Johnson *is* subject to N.J.S.A. § 14A:2-9(4), and when interpreting New Jersey statutes, New Jersey courts often look to Delaware case law interpreting similar provisions. *See, e.g., IBS Fin. Corp. v. Seidman & Assocs., L.L.C.*, 136 F.3d 940, 949–50 (3d Cir. 1998). Thus, section 14A:2-9(4) as already written limits the subject-matter of corporate bylaws to matters of internal affairs.

And those words limit corporate bylaws to matters related to "the business of the corporation," "the conduct of [the business's] affairs," and "the rights or power of its shareholders, directors, officers or employees." N.J.S.A. § 14A:2-9(4). The text thus limits bylaws to the corporation's "affairs," which has long been understood to mean matters *internal* to the corporation—it leaves no room for matters that fall outside this scope. *See, e.g.*, *Boilermakers*, 73 A.3d at 939, 951. That is why Delaware courts have interpreted the very same language as limiting regulation to *only* those matters of internal affairs. *Sciabacucchi*, 2018 WL 6719718, at \*1. And, were there any doubt, the statutory context reinforces this conclusion. *See, e.g.*, *In re J.S.*, 133 A.3d 282, 286 (N.J. Super. Ct. App. Div. 2016) ("When interpreting a statute, we start with the principle that context matters."). Here, the context is clear: There is a long history of limiting a corporation's documents to matters that can be controlled by the state of incorporation, and that state can only regulate corporate internal affairs. *See* note 1; *see also Sciabacucchi*, 2018 WL 6719718, at \*2.

What's more, the trust's interpretation of N.J.S.A. § 14A:2-9(4) proves too much. According to the trust, this provision's "sweeping" text allows corporations to include bylaws related to any subject for which "Johnson & Johnson or its directors and officers will be named defendants" in a suit (Pl. Response at 3), anything that "will affect the corporation's assets and insurance policies" or "the value of its stock" (Pl. Response at 3–4), and anything that changes any power or right of either a Johnson & Johnson director or its shareholders (Pl. Response at 5). In short, according to the trust, New Jersey allows corporations to put *anything* in their bylaws, including waivers for tort claims, state labor-law violations, or federal antitrust violations. That would render subsection 4 meaningless.

### C.    The trust's attempts to distinguish Delaware precedent fail.

The trust argues, unpersuasively, that this Court should not consider the Delaware Chancery Court's decisions in *Boilermakers* and *Sciabacucchi* because they are not about bylaws

mandating arbitration of securities-fraud claims. But those cases are directly on point and provide strong justifications for interpreting N.J.S.A. § 14A:2-9(4) as limiting the subject matter of corporate bylaws to matters of internal affairs.

The trust first asserts (at 23) that *Boilermakers* does not suggest that a securities-fraud claim would be a matter of internal affairs. That is incorrect. In that case, the Delaware Court of Chancery recognized that corporate bylaws could not regulate matters external to the corporation such as a shareholder's "tort claim against the company based on a personal injury" or "a contract claim based on a commercial contract with the corporation." 73 A.3d at 952. The reason why these claims exceeded Delaware's statute was "obvious": "the bylaws would not deal with the rights and powers of the plaintiff-stockholder as a stockholder." *Id.* Put another way, a forum-selection clause only extends to claims that arise from "the contract that defines and governs the stockholders' rights." *Id.* at 952 n.78 (quoting Grundfest & Savelle, *The Brouhaha over Intra-Corporate Forum Selection Provisions*, at 369). A securities-fraud claim is external to the corporation in the same way. The court in *Boilermakers* expressly recognized as much, stating that "a stockholder's ability to bring a securities fraud claim . . . is not an intra-corporate matter." *Id.* at 962 (quoting Grundfest & Savelle, *The Brouhaha over Intra-Corporate Forum Selection Provisions*, at 370). That is because securities fraud claims are based on rights created not by a corporation's bylaws, which define and govern a shareholder's rights with respect to the corporation, but instead by federal law. And a securities-fraud claim arises during inducement to purchase a stock, which occurs *before* the purchaser is a shareholder, and survives even if someone sells their stock and therefore ceases to be a shareholder governed by the bylaws. CalPERS MTD at 13.[3]

---

[3] The trust also suggests that federal securities-fraud claims must be matters of internal affairs because the Court of Chancery upheld a forum-selection bylaw that extended to "'*any* derivative action or proceeding brought on behalf of the Corporation'—which includes

The trust next argues (at 26) that *Sciabacucchi* is "readily distinguishable" from this case because *Sciabacucchi* concerned "a forum-selection" provision rather than an "arbitration" bylaw. This distinction is both incorrect and irrelevant. In *Sciabacucchi*, the Delaware Court of Chancery held that under Delaware's nearly-identical statute governing the contents of corporate bylaws, a forum-selection bylaw could not govern federal securities claims because such claims are not matters of a corporation's internal affairs. 2018 WL 6719718, at *1–2. The court reasoned that a corporation's fraudulent representations "do[] not arise out of the corporate contract" and are thus "beyond the power of state corporate law to regulate." *Id.* at *2; *see also* CalPERS MTD at 12–13. This Court should reach the same conclusion here. As courts have repeatedly recognized, an arbitration agreement is merely "a specialized kind of forum-selection clause." *Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 384 n.41 (Del. 2013) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974)). Thus, the result would be the same for an arbitration agreement as for any other type of forum-selection clause.

The trust tries to give this false distinction meaning by suggesting that a Delaware court would hold that the internal affairs doctrine applies to all forum-selection clauses *except for* arbitration agreements because "the FAA will preempt state laws or judicial rulings that prevent the enforcement of arbitration contracts." Pl. Response at 26. But that isn't how courts analyze FAA preemption. First, courts must determine whether there is a conflict between state law and an arbitration agreement at all. Second, if such a conflict exists, courts must decide if the state

---

derivative actions brought under the federal securities laws." Pl. Response at 23. But such a bylaw on its face governs the rights and duties between a shareholder and a corporation—it places a procedural limitation on shareholders who choose to step into the corporation's shoes and sue on the corporation's behalf. In particular, such a forum-selection clause requires the shareholder to sue in the forum most suitable to the corporation, which is the real party in interest. But a plaintiff in a securities-fraud claim *against* the corporation is not acting on the corporation's behalf, and thus the question of where such a claim should be filed does not implicate the intra-corporate relationship.

statute is nevertheless preempted. The FAA thus has no bearing on how a state law is interpreted in the first instance.

Finally, the trust argues (at 27) that *Sciabacucchi* is "flatly incompatible" with *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554 (Del. 2014), and thus should not be persuasive to this Court. The trust's argument boils down, yet again, to an assertion that a securities-fraud claim is "intra-corporate." But *ATP Tour* says no such thing—it does not even mention securities fraud cases—and the Delaware Chancery Court's opinions in *Sciabacucchi* and *Boilermakers* clearly explain why such claims are *not* matters of internal affairs.

## II.   The Federal Arbitration Act does not preempt New Jersey law.

The trust repeats its claim that, even if its proposed bylaw violates New Jersey law, that does not matter because the Federal Arbitration Act preempts New Jersey's law. Pl. Response at 28–30. But as we explained in our motion to dismiss, the FAA does not apply to corporate bylaws. And even assuming that the FAA were to apply to bylaws, New Jersey's law is not preempted because it generally applies and does not discriminate against arbitration. The trust barely responds to either argument.

### A.   The FAA does not apply to corporate bylaws.

#### 1.   Corporate bylaws are not "contracts evidencing a transaction" under the FAA.

As laid out in our motion to dismiss and acknowledged by a wealth of scholars, the FAA does not govern corporate bylaws because bylaws do not require a mutual manifestation of assent to be bound. CalPERS MTD at 21–26. Because "[a]rbitration is strictly a matter of consent," the FAA applies only where the parties have manifested their assent to be bound. *Lamps Plus, Inc. v.*

*Varela*, 139 S. Ct. 1407, 1415 (2019).[4] But neither shareholders nor the corporation manifest assent to be bound to bylaws. Shareholders generally do not know when corporate bylaws are changed, nor do they receive a copy of the bylaws when they are amended, and thus shareholders cannot "consent" to be bound by these changed provisions. CalPERS MTD at 24.

Thus, while courts sometimes refer to corporate bylaws as "contracts" for purposes of corporate law, bylaws do not have the critical feature of contracts needed for the FAA to apply. CalPERS MTD at 22, 25–26. The Third Circuit recognized this "tension" in *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 162–63 (3d Cir. 2009)—a case that is directly on point, and to which the trust has no persuasive response. In this very context, the Third Circuit contrasted "corporate law principles," which "impute to members of the corporation knowledge and acceptance of corporate bylaws," with "the law of contracts," under which a party must "consent to be bound." *Id.* As a result, the Third Circuit rejected enforcement of an arbitration agreement against a shareholder despite the corporation's argument that the shareholder had consented to the bylaws. *Id. Kirleis* thus stands for the proposition that, even if corporate bylaws may be called "contracts" for purposes of *corporate law*, they are not "contracts" for purposes of contract law or the FAA.

Although *Kirleis* is binding precedent in this Court, the trust's only response is to express its disagreement with the Third Circuit's decision. The trust argues that "anything that qualifies as a 'contract' under state law is by definition a 'contract' under the FAA." Pl. Response at 29. It buries this response in a footnote, where it asserts that *Kirleis* "is inapplicable" because that case "describes the law of Pennsylvania rather than New Jersey." Pl. Response at 30 n.16. But while it

---

[4] The trust's unsupported assertion that the FAA does not require consent and is instead "concerned only with whether a 'contract' exists," Pl. Response at 30, is belied by a wall of Supreme Court precedents, including *Lamps Plus*, that are quoted in our motion to dismiss, *see* CalPERS MTD at 22–23.

is true that *Kirleis* was a case arising under Pennsylvania law, the principle that it recognized—that corporate law imputes knowledge of bylaws to shareholders while contract law for purposes of the FAA requires actual consent to be bound to form a contract—applies equally to New Jersey law, which requires mutual assent to form a contract. *See James v. Global TelLink Corp*, 852 F.3d 262, 265 (3d Cir. 2017) (collecting New Jersey cases requiring actual manifestations of mutual assent to be bound to enforce a contract).

And the trust provides no authority contrary to this understanding: It cites *Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002), to support its position, but that case says only that federal courts must look to "state law *on the formation of contracts* to determine whether there is a valid arbitration agreement under the FAA." Pl. Response at 29 (emphasis added) (quoting *Blair*, 283 F.3d at 603). That's true. And under New Jersey law, a contract can be formed only when the parties manifest their assent, and a modification to a contract is only valid when the parties have "[k]nowledge" and demonstrate "clear" assent to that modification. *Hazen v. Leach*, 2006 WL 1388813, at *2 (N.J. Super. App. Div. May 22, 2006). Because corporate bylaws are changed without requiring such clear manifestations of assent, *Kirleis*, 560 F.3d at 160, they do not meet the requirements to form a contract under state law, even if state courts find it useful to deem them contracts for corporate-law purposes.

### 2. Securities-fraud claims are not controversies that "aris[e]" out of corporate bylaws.

Even if corporate bylaws *were* considered a contract, the FAA would still not apply in this case because securities-fraud claims do not arise out of a corporation's bylaws. CalPERS MTD at 19–20. A securities-fraud claim arises from the shareholder's *purchase* of stock—a transaction to which the corporation is usually not a party because the sale is between a purchaser and a seller on the secondary market or a purchaser and an underwriter in an offering. Thus, "[a]t the

moment the predicate act of purchasing occurs, the purchaser is not yet a stockholder and does not yet have any relationship with the corporation . . . . Nor must the purchaser continue to own the security to be able to assert a claim under the [Securities] Act: the plaintiff can sue even if it subsequently sells and is no longer a stockholder." *Sciabacucchi*, 2018 WL 6719718, at *17.

The trust is simply wrong in its assertion (at 31–32) that bylaws are evidence of the "transaction" of purchasing stock. Corporate bylaws do not contain any terms related to any particular sale or purchase of stock. They contain only general governing rules that apply regardless of when, how, or from whom the corporation's shares are purchased. And the trust does not explain how corporate bylaws could possibly "evidenc[e] a transaction" to which the corporation itself is usually not a party. In short, a corporation's bylaws are not purchase agreements and therefore are not contracts evidencing a stock purchase. Courts have rejected attempts, like the trust's, to elide an arbitration agreement with a claim that arose concurrently with adoption of the agreement but not arising from the agreement itself. CalPERS MTD at 20 (citing *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995)). This Court should likewise decline the trust's invitation to confuse the issue.

**B.    The FAA does not preempt generally applicable New Jersey law.**

There is yet a third reason why the FAA does not preempt New Jersey's law prohibiting bylaws from regulating matters external to the corporation: the state law is generally applicable and thus section 2 of the FAA does not apply. As explained in our motion to dismiss, section 2 of the FAA creates an exception for state law that applies to "any contract." 9 U.S.C. § 2; CalPERS MTD at 15–16. The section is an "equal-treatment principle" meant to preempt state law that "discriminat[es] on its face against arbitration." *Kindred Nursing Centers Ltd. v. Clark*, 137 S. Ct. 1421, 1426 (2017). And it is hard to imagine a state law more generally applicable than N.J.S.A. § 14A:2-9(4). That statute does not apply solely to arbitration agreements or even to forum-selection

clauses: it prevents *any* corporate bylaw that touches on a subject not related to the internal affairs of a corporation. *See* CalPERS MTD at 17–18 (collecting cases limiting subject matter of bylaws in ways unrelated to arbitration).

The trust attempts to get around this obvious application of the FAA's terms by offering a novel interpretation of that statute: that "the *only* basis for invalidating an arbitration contract" under section 2 of the FAA "is a general contract defense." Pl. Response at 32. Neither the FAA itself, nor the Supreme Court, has said any such thing. To the contrary, the trust's argument cannot be squared with the Supreme Court's precedents, which have taken care to give examples of state statutes that are preempted by the FAA, including "a 'law prohibit[ing] outright the arbitration of a particular type of claim'" and a "state law declaring unenforceable any contract that 'disallow[ed] an ultimate disposition [of a dispute] by a jury.'" *Kindred Nursing Centers*, 137 S. Ct. at 1426 (alterations in original) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 342 (2011)). These examples would be unnecessary and would make no sense if the Supreme Court meant to say that *only* common-law contract defenses survived FAA preemption.

And while the plaintiff trust relies heavily on *Concepcion*, that case does not shed any light on how N.J.S.A. § 14A:2-9(4) should be interpreted. In *Concepcion*, the Court considered whether a California rule "classifying most collective-arbitration waivers in consumer contracts as unconscionable" was preempted by the FAA. 563 U.S. at 340. According to the Court, the California rule singled out arbitration agreements and allowed a consumer to invalidate the agreement and request a class-wide proceeding after the fact. *See id.* at 346–47. The Court thus concluded that the California rule was preempted. In this case, however, New Jersey's rule does not single out arbitration either expressly or indirectly. This is clear from the fact, which the trust does not dispute, that N.J.S.A. § 14A:2-9(4) would not prohibit a corporation from adopting an arbitration-agreement bylaw related to internal corporate affairs. CalPERS MTD at 18. And the

11

same law would prohibit a bylaw *banning* arbitration of cases involving external affairs to the same extent that it would prohibit a bylaw *mandating* arbitration of cases involving external affairs.

The trust argues that the FAA should nevertheless preempt New Jersey's law because, if corporations cannot use bylaw amendments to require arbitration of securities-law claims, it will be "impossible to establish arbitration contracts for federal securities-law claims." Pl. Response at 33. The trust does not identify any authority holding that the test for FAA preemption is whether a law may indirectly preclude adopting an arbitration clause. Such a rule would preclude states from placing *any* limits on the subjects of corporate governance documents on the theory that those limits might preclude *some* number of arbitration agreements. In addition, the trust is wrong as a matter of fact. As we explained in our motion to dismiss, a corporation is free to include an arbitration provision in a purchase agreement connected to the sale of stock. *See* CalPERS MTD at 19–20. Nothing in New Jersey law holds otherwise.

12

Respectfully submitted,

/s/ James E. Cecchi

MARC I. GROSS                        JAMES E. CECCHI
JEREMY A. LIEBERMAN                   LINDSEY H. TAYLOR
JENNIFER PAFITI                       Carella, Byrne, Cecchi, Olstein,
MICHAEL GRUNFELD                      Brody & Agnello, P.C.
Pomerantz LLP                        5 Becker Farm Road
600 Third Avenue                     Roseland, NJ 07068
New York, NY 10016                   (973) 994-1700
(212) 661-1100

SALVATORE J. GRAZIANO                 DEEPAK GUPTA (*pro hac vice*)
HANNAH ROSS                          MATTHEW WESSLER
JAI K. CHANDRASEKHAR                  ALEXANDRIA TWINEM *
Bernstein Litowitz Berger            Gupta Wessler PLLC
& Grossmann LLP                      1900 L Street, NW, Suite 312
1251 Avenue of the Americas          Washington, DC 20036
New York, NY 10020                   (202) 888-1741
(212) 554-1400

*Admitted in New York only; practicing under
supervision of members of the D.C. Bar.*

*Counsel for Proposed Intervenors California Public
Employees' Retirement System and Colorado Public
Employees' Retirement Association*

July 29, 2019